896 A.2d 1101 (2006)
385 N.J. Super. 172
Anita LAUFER, on behalf of herself and all others similarly situated, Plaintiff-Respondent,
v.
The UNITED STATES LIFE INSURANCE COMPANY IN the CITY OF NEW YORK, Defendant-Appellant, and
Albert H. Wohlers & Co. n/k/a Seabury & Smith, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2006.
Decided May 1, 2006.
*1104 Peter Jason, of the New York and Pennsylvania Bars, admitted pro hac vice, argued the cause for appellant (Duane Morris, attorney; Mr. Jason, Philadelphia, PA, Gregory R. Haworth, Newark, Suzanne H. dePillis, Hamilton and Margaret M. O'Rourke, Newark, on the brief).
Madeline L. Houston, argued the cause for respondent (Houston & Totaro, attorneys, Bloomfield; Ms. Houston and Melissa J. Totaro, on the brief).
Before Judges SKILLMAN, AXELRAD and PAYNE.
*1103 The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves the maintainability of a class action under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, where the complaint alleges that the putative class representative suffered an "ascertainable loss" but contains no allegation that other class members suffered any "ascertainable loss" and seeks only declaratory and injunctive relief on their behalf.
Sometime before 1993, plaintiff Anita Laufer subscribed to a group accident and sickness insurance policy as a member of an organization called Women's American ORT. The insurer that originally issued the policy discontinued coverage at the end of 1993, at which time defendant United States Life Insurance Company (U.S. Life) issued a replacement policy providing similar coverage.
The coverage provided under the U.S. Life policy included the cost of care in a "convalescent home." However, the definition of "convalescent home" excluded any facility that is "used mainly for the aged."
Defendant Albert H. Wohlers & Co. was the administrator for the group policy U.S. Life issued to members of Women's American ORT. Beginning in 1995, Wohlers sent a series of notices to policyholders, including Laufer, which indicated that the U.S. Life policy provided "nursing home" benefits. In February and March of 1995, Wohlers sent a notice that stated in part:

* IMPORTANT NOTICE *
Your Catastrophe Major Medical Insurance Plan now includes an increased Nursing Home Benefit!
Recently, you elected to increase your Nursing Home coverage by adding a new, increased NURSING HOME BENEFIT RIDER to your Catastrophe Major Medical Insurance Plan.
By adding this increased coverage to your current Catastrophe Major Medical Plan, your nursing home benefit has been improved! The Nursing Home Benefit Rider increases your coverage. . .
Up to $500 per week in benefits payable for convalescent or custodial care for a covered confinement in a nursing home. (Previously, this benefit provided you with up to $400 per week of coverage.)

*1105 Enclosed is the RIDER outlining your improved Nursing Home benefit. . . .
In September 1996 and again in February 1997, Wohlers sent another notice that stated in part:
Currently, your Catastrophe Major Medical Insurance Plan provides up to $1,000,000 in protection. IF YOU ADD THE ENHANCED BENEFIT RIDERS. . . your benefits will be INCREASEDproviding you with up to $2,000,000 in total protection. PLUS. . . your Nursing Home benefit will be increased by $100 Per Week. . . .
In addition, the bills that Wohlers sent to policyholders indicated that the coverage provided under the U.S. Life policy included a "nursing home benefit."
In response to Wohlers' solicitations, Laufer increased her coverage under the U.S. Life policy, for which she paid additional premiums. According to Laufer, she had major medical insurance coverage through her employer, and the only reason she continued her coverage under the U.S. Life policy was to maintain the nursing home benefit she thought it provided. However, Laufer learned in late 2002 that the policy did not provide any nursing home benefit. As a result, she discontinued her coverage.
Thereafter, Laufer brought this action against U.S. Life and Wohlers, alleging that Wohlers' communications regarding the "nursing home" benefit provided under the U.S. Life policy violated the Consumer Fraud Act. Laufer's complaint alleges that she had suffered an "ascertainable loss" as a result of those deceptive communications, for which she seeks monetary damages.
Laufer's complaint was brought not only on her own behalf but also on behalf of a class consisting of "all persons in the United States who at any time from May 12, 1998 through the present are or have been insured under a group catastrophe major medical insurance policy underwritten by [U.S. Life] . . . and . . . administered by [Wohlers]." The complaint does not allege that other members of the class suffered any "ascertainable loss," and it seeks only declaratory and injunctive relief on their behalf. Specifically, the complaint seeks a declaration that Wohlers' communications regarding the purported nursing home benefit provided under the U.S. Life policy violated the Consumer Fraud Act and "an injunction compelling defendants to send written notice to all class members, notifying them in plain and prominent language that they do not, and have not had, nursing home coverage, and notifying them that the Court has declared that all the representations made by [Wohlers] on behalf of [U.S. Life] to the effect that there was a nursing home benefit included in class members' coverage were deceptive in violation of the . . . Consumer Fraud Act."
Laufer filed a motion for class certification under Rule 4:32-1(b)(2), which provides for class certification in cases where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" The trial court issued a comprehensive written opinion that denied the motion insofar as it sought certification of a nationwide class, but granted the motion with respect to all New Jersey residents "who at any time from May 12, 1998 through the present are or have been insured under a group catastrophe major medical insurance policy underwritten by [U.S. Life] and administered by [Wohlers]." In concluding that this is an appropriate case for class certification under Rule 4:32-1(b)(2), the trial court stated:
There is little question that U.S. Life is alleged to have acted on grounds generally *1106 applicable to the class. Its Plan applies generally to all members of the putative class, and its administrator's communications with class members appears consistent, if not uniform. Since this case involves the use of form contracts and mass mailings, it is particularly appropriate to use the class action procedure. . . .
. . . I agree with Laufer's assertion that defendants' alleged violations of the [Consumer Fraud Act] likely would affect every potential class member similarly and therefore defendants have acted in [a] way which is "generally applicable to the class."
We granted U.S. Life's motion for leave to appeal from the order certifying the class. Laufer did not seek leave to cross-appeal from the denial of her motion for certification of a nationwide class.
On appeal, U.S. Life argues that Laufer's complaint does not satisfy the requirements for class certification under Rule 4:32-1(b)(2). U.S. Life also argues that the class certification Laufer seeks would violate the section of the Consumer Fraud Act that limits private causes of action to consumers "who suffer[] any ascertainable loss," N.J.S.A. 56:8-19, because the complaint does not allege that class members, other than Laufer herself, suffered any ascertainable loss. We reject both arguments and affirm the order granting class certification.

I
To maintain a class action, a putative class representative must satisfy the general prerequisites set forth in Rule 4:32-1(a), which are:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
These prerequisites of a class action are often referred to as "numerosity, commonality, typicality, and adequacy of representation." See In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 425, 461 A.2d 736 (1983).
In addition, the putative class representative must satisfy one of the prerequisites for maintenance of a class action set forth in Rule 4:32-1(b). Laufer seeks class certification under Rule 4:32-1(b)(2), which authorizes maintenance of a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"
U.S. Life does not dispute that Laufer has satisfied the requirements of numerosity and commonality set forth in Rule 4:32-1(a)(1) and (2). However, U.S. Life argues that Laufer has failed to show the typicality of her claim and adequacy of representation required by Rule 4:32-1(a)(3) and (4) or that her claim qualifies for class certification under Rule 4:32-1(b)(2). We consider each of these arguments in order.

A
The claims of a putative class representative are typical if they "have the essential characteristics common to the claims of the class." In re Cadillac, supra, 93 N.J. at 425, 461 A.2d 736 (quoting 3B James W. Moore et al., Moore's Federal Practice § 23.06-2 (2d ed. 1982)). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement *1107 is not highly demanding." 5 James W. Moore et al., Moore's Federal Practice § 23.24[4] (3d ed. 1997). "If the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members, the typicality requirement is satisfied." Moore, supra, § 23.24[2]. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir.1994). "Actions requesting declaratory and injunctive relief to remedy conduct directed at the class[,]" which is the primary relief sought in a class action brought under Rule 4:32-1(b)(2), "clearly fit this mold." Ibid.
Although Laufer's complaint seeks declaratory and injunctive relief on behalf of the other members of the class and ancillary monetary relief for herself only, Laufer's claims on behalf of the class and herself are all based on the same alleged unlawful conductWohlers' mailing of notices to U.S. Life policyholders containing alleged deceptive statements that their coverage included nursing home benefits and they rely upon the same legal theorythat those statements violated the Consumer Fraud Act. Therefore, Laufer's claims "have the essential characteristics common to the claims of the class[,]" In re Cadillac, supra, 93 N.J. at 425, 461 A.2d 736, and thus satisfy the typicality requirement of Rule 4:32-1(a)(3).

B
In determining whether the putative class representative will be able to "fairly and adequately protect the interests of the class[,]" as required by Rule 4:32-1(a)(4), "courts consider the adequacy of both the named representative and class counsel." Moore, supra, § 23.25[3][a]. U.S. Life does not dispute that Laufer's counsel has the qualifications, experience and ability to conduct this proposed class action. U.S. Life's argument is directed solely at whether Laufer can properly represent the interests of the class.
The determination whether a putative class representative can fairly and adequately protect the interests of the class is closely related to the requirement of typicality. See In re Cadillac, supra, 93 N.J. at 425, 461 A.2d 736. To satisfy this requirement, "the plaintiff must not have interests antagonistic to those of the class." Delgozzo v. Kenny, 266 N.J.Super. 169, 188, 628 A.2d 1080 (App. Div.1993) (quoting In re Asbestos Sch. Litig., 104 F.R.D. 422, 430 (E.D.Pa.1984)). However, this does not mean that "the interests of the class representative and the absentee class members [must] be identical." Moore, supra, § 23.25[4][b][i]. "[T]he named representative only needs to be adequate[.]" Ibid.
Laufer's interest in demonstrating that Wohlers' communications to U.S. Life policyholders violated the Consumer Fraud Act is identical to that of other class members. Laufer's proof of this violation, which is the sole basis for her monetary claim against U.S. Life, would also establish the required foundation for the declaratory and injunctive relief she seeks on behalf of other class members. Although Laufer would be required to prove the damages she suffered as a result of that alleged violation to obtain monetary relief, there is no basis for concluding that her need to prove damages would in any way detract from her ability to represent the other class members. Moreover, even though Laufer does not seek injunctive relief on her own behalf, the pursuit of that relief on behalf of other class members *1108 is not antagonistic to Laufer's pursuit of monetary relief for herself. It also would require only limited, if any, additional work on the part of class counsel. Therefore, Laufer has established the adequacy of representation requirement of Rule 4:32-1(a)(4).

C
When a putative class representative seeks class certification under Rule 4:32-1(b)(2), a preliminary showing must be made that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" The only reported appellate decision in this State interpreting Rule 4:32-1(b)(2) is not relevant to the class certification issue presented in this appeal.[1] Where there is no New Jersey case law relevant to a class certification issue, "our courts have consistently looked to the interpretations given the federal counterpart for guidance." Delgozzo, supra, 266 N.J.Super. at 188, 628 A.2d 1080.
The Advisory Committee Notes to the 1966 amendment to Fed.R.Civ.P. 23(b)(2), from which Rule 4:32-1(b)(2) was derived, Muise v. G.P.U., Inc., 371 N.J.Super. 13, 31, 851 A.2d 799 (App.Div.2004), state that "[a]ction or inaction" is considered to have been "directed to a class . . . even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed.R.Civ.P. 23 Advisory Committee Note, 39 F.R.D. 73, 102 (1966). Thus, a class action may be maintained under Rule 4:32-1(b)(2) even though defendant's conduct is not "damaging to every member of the class." Baby Neal, supra, 43 F.3d at 58. "What is important is that the relief sought by the named plaintiffs should benefit the entire class." Id. at 59; see generally 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 1775 (3d ed. 2005); Moore, supra, § 23.43 to 23.44.
Wohlers' alleged deceptive written notices, which indicated that the U.S. Life group accident and sickness policy provided coverage for nursing home benefits, were sent to all policyholders. Consequently, these alleged deceptive statements were potentially damaging to every member of the putative class, even though some class members may not have read the notices or relied upon the purported nursing home benefits in determining whether to maintain the coverage provided by the policy. Therefore, the limited injunctive relief sought by Laufernotice to all other class members that "they do not, and have not had, nursing home coverage,. . . and that the court has declared that all the representations made . . . to the effect that there was a nursing home benefit included in class members' coverage were deceptive in violation of the Consumer Fraud Act"would clearly "benefit the entire class." Baby Neal, supra, 43 F.3d at 59. If Laufer proves that the notice Wohlers sent to U.S. Life policyholders violated the Consumer Fraud Act, and all class members are informed of this violation, some of them may then make individual *1109 decisions to discontinue coverage or to seek monetary relief against U.S. Life based on their own individual circumstances.[2]
For these reasons, we conclude that Wohlers' form notices to all policyholders under the U.S. Life group accident and sickness policy constituted "[action] generally applicable to the class" that Laufer seeks to represent, and if those notices are found to have violated the Consumer Fraud Act, it may be appropriate to grant the "final injunctive relief . . . with respect to the class as a whole" that Laufer seeks. Consequently, this case qualifies for class certification under Rule 4:32-1(b)(2).

II
U.S. Life also argues that Laufer's complaint cannot be maintained as a class action because a private cause of action under the Consumer Fraud Act may be pursued only by a consumer who suffered "ascertainable loss," N.J.S.A. 56:8-19, and Laufer's complaint does not allege that other class members suffered "ascertainable loss" as a result of U.S. Life's alleged consumer fraud.
"As originally enacted, the [Consumer Fraud] Act was exclusively enforced by the Attorney General, who was provided with broad powers to . . . seek injunctions prohibiting fraudulent conduct and orders of restitution to make whole any person damaged by conduct violating the Act[.]" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 472-73, 541 A.2d 1063 (1988). However, the Act was amended in 1971 to authorize private actions. See L. 1971, c. 247, § 7. The section of the Act authorizing private actions now provides in pertinent part:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
[N.J.S.A. 56:8-19.]
Thus, by the express terms of this section, a private plaintiff who establishes a violation of the Consumer Fraud Act may obtain not only monetary relief, including treble damages and attorneys' fees, but also "equitable relief."
The Supreme Court has described consumers who bring private actions under the Consumer Fraud Act as "private attorneys general." Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 268, 696 A.2d 546 (1997). Consequently, a private action may seek to remedy a Consumer Fraud Act violation not only as it affects the named plaintiff but also other consumers. Consistent with this view of the legislative intent in authorizing private consumer fraud actions, the Court has indicated that "the class action rule should be construed liberally in a case involving allegations of consumer fraud." In re Cadillac, supra, *1110 93 N.J. at 435, 461 A.2d 736; see also Strawn v. Canuso, 140 N.J. 43, 68, 657 A.2d 420 (1995) ("[A] class action is the superior method for adjudication of consumer-fraud claims[.]"); Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 226-28, 294 A.2d 7 (1972) ("[A] court should be slow to hold that a suit [under the Consumer Fraud Act] may not proceed as a class action.").
The only prerequisite for maintenance of a private action to remedy a violation of the Consumer Fraud Act is that "[the] plaintiff must present a claim of ascertainable loss." Weinberg v. Sprint Corp., 173 N.J. 233, 251, 801 A.2d 281 (2002). This is purely a "standing" requirement. Ibid. The Act does not require a private plaintiff's claim of ascertainable loss to "ultimately prove successful." Ibid. The plaintiff is only required to "plead a claim of ascertainable loss that can survive a motion for summary judgment." Id. at 253, 801 A.2d 281. Once this threshold standing requirement is satisfied, the plaintiff can pursue "all available remedies, including an injunction,. . . even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act." Ibid.
In a class action, only the putative class representative is required to satisfy any applicable standing requirement. "[Unnamed plaintiffs] need not make any individual showing of standing [in order to obtain relief], because the standing issue focuses on whether the plaintiff is properly before the court, not whether . . . absent class members are properly before the court." Lewis v. Casey, 518 U.S. 343, 395, 116 S.Ct. 2174, 2201, 135 L.Ed.2d 606, 646 (1996) (Souter, J., concurring in part, dissenting in part) (quoting Alba Conte & Herbert Newberg, Newberg on Class Actions § 2.07 (3d ed. 1992)). "Once [the named plaintiff's] standing has been established, whether [he] will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed [by the rules governing class actions]." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir.1998). Therefore, only the named plaintiff, Laufer, is required to satisfy the threshold standing requirement of "a claim of ascertainable loss that can survive a motion for summary judgment." Weinberg, supra, 173 N.J. at 253, 801 A.2d 281.
In support of its argument that a class action asserting a Consumer Fraud Act violation may be maintained only if the complaint alleges that not only the putative class representative but also all other class members suffered "ascertainable loss," U.S. Life relies upon Thiedemann v. Mercedes-Benz USA, 183 N.J. 234, 251-54, 872 A.2d 783 (2005); Weinberg, supra, 173 N.J. at 253-54, 801 A.2d 281; and N.J. Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 16, 842 A.2d 174 (App. Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003). However, the issue in those cases was whether the named plaintiff had made the showing of ascertainable loss required to obtain standing under N.J.S.A. 56:8-19, not whether the action could be pursued by the named plaintiff on behalf of other unnamed class members. Therefore, those cases provide no support for U.S. Life's argument that a putative class representative must allege that the unnamed class members suffered ascertainable loss to maintain a class action under the Consumer Fraud Act.
Furthermore, it is insufficient under Weinberg for a complaint simply to allege ascertainable loss. The plaintiff must be able to present sufficient evidence of such loss to survive a motion for summary judgment. Weinberg, supra, 173 *1111 N.J. at 253, 801 A.2d 281. A class representative is not generally in a position to present evidence that unnamed class members suffered ascertainable loss as a result of an alleged consumer fraud. Consequently, if the Consumer Fraud Act were construed to require a showing that not only the putative class representative but also the unnamed class members suffered an ascertainable loss, this would create a significant obstacle to the maintenance of class actions under the Act. However, as previously noted, our courts have consistently indicated that class actions for the vindication of rights protected by the Consumer Fraud Act should be encouraged. Therefore, we decline to construe the "ascertainable loss" prerequisite for maintenance of a private action in a manner that would significantly undermine the availability of class actions to remedy violations of the Consumer Fraud Act.

III
In sum, the requirement that a plaintiff in a private action under the Consumer Fraud Act suffer "ascertainable loss" is solely a standing requirement. In a class action, the putative class representative is the only party who must satisfy any applicable standing requirement. Thus, if Laufer can make a sufficient showing of "ascertainable loss" to survive a motion for summary judgment, this showing does not have to be made with respect to other unnamed class members. Once the class representative establishes standing, the determination whether the action may be maintained as a class action turns solely on whether the requirements of Rule 4:32-1 have been satisfied. For the reasons set forth in section I of this opinion, Laufer has shown that this action satisfies the requirements of Rule 4:32-1(a) and that U.S. Life's alleged violations of the Consumer Fraud Act constitute "action generally applicable to the class" she seeks to represent, which may be remedied by the "final injunctive relief" she proposes, thus satisfying the requirements of Rule 4:32-1(b)(2). Therefore, the trial court properly granted Laufer's motion for class certification.
Affirmed.
NOTES
[1] That decision, Mac Neil v. Klein, 141 N.J.Super. 394, 411-13, 358 A.2d 488 (App.Div.), certif. denied, 72 N.J. 455, 371 A.2d 60 (1976), held that an action challenging conditions in all county jails was not certifiable under Rule 4:32-1(b)(2) as a class action on behalf of all county detention facility inmates due to the widely varying conditions in the twenty-one county jails. In contrast, this case involves a uniform notice allegedly sent to all U.S. Life group policyholders whose policies were administered by Wohlers.
[2] On remand, the trial court is directed to consider whether this action should be certified as a class action solely as to liability, and not as to damages, to assure that the right of other class members to pursue their own claims for monetary relief are preserved. See R. 4:32-2(d); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661-62 (7th Cir.2004), cert. denied, 543 U.S. 1051, 125 S.Ct. 877, 160 L.Ed.2d 772 (2005).